IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

**TERRY BENDER,**

    Petitioner,

v.                                                  Civil Action No. 5:14cv35
                                                  (Judge Stamp)

**ANNE CARTER, Warden,**

    Respondent.

## REPORT AND RECOMMENDATION

On March 17, 2014, the *pro se* petitioner filed a petition under 28 U.S.C. § 2241, challenging his conviction and sentence entered in the United States District Court for the Northern District of Ohio. The Clerk of Court issued a Notice of Deficient Pleading the same day, directing the petitioner to either file an application to proceed as a pauper, with a copy of his Prisoner Trust Account Report, or pay the five dollar filing fee, and file his petition on a court-approved form within twenty-one days. On March 19, 2014, petitioner paid the required filing fee, and on April 1, 2014, he filed his court-approved form petition. On April 2, 2014, the respondent was ordered to file a response. On April 22, 2014, the respondent filed a Motion to Dismiss and Response to Order to Show Cause, along with a memorandum in support. A Roseboro Notice was issued to the petitioner on April 23, 2014. On May 14, 2014, the petitioner filed a Memorandum in Opposition to the respondent's Motion to Dismiss which incorporated a Motion for Immediate Release. On August 28, 2014, the petitioner filed a Motion for Bond and/or Immediate Release.

This matter is pending before the undersigned for review and Report and Recommendation pursuant to LR PL P1 and 2.

## I. Factual and Procedural History

On March 17, 1993, the petitioner, along with 18 other individuals, was indicted by a federal grand jury in a nine-count superseding indictment with a forfeiture provision. On June 11, 1993, the petitioner pled guilty pursuant to a written plea agreement to Count One, conspiracy to possess and distribute cocaine; Count Three, felon in possession of a firearm; and Count Eight, money laundering.[1] On August 9, 1993, the petitioner filed a motion to vacate his guilty plea. Following an evidentiary hearing on August 10, 1993, the United States District Court for the Northern District of Ohio denied his motion, and sentenced him to 360 months on Count one; 27 months on Count Three; and 121 months on Count Eight, to run concurrently; five years supervised release; a $25,000.00 fine, and a total special assessment of $150 on the three counts. Pursuant to the plea agreement, petitioner also agreed to the forfeiture of $11,534.00 in U.S. currency.

On November 7, 1994, the Sixth Circuit affirmed the petitioner's conviction and sentence in United States v. Bender, 41 F.3d 1508, 1994 WL 622158 (6th Cir. 1994)(unpublished opinion).

Thereafter, between 1994 and mid-December 2012, the petitioner, deemed a "vexatious litigant"[2] in 2006 by the sentencing court, filed a multitude of post-conviction challenges to his

---

[1] The plea agreement also stated, *inter alia,* that Bender expressly waived his right to challenge the forfeiture and the right to appeal or file any post-conviction writs of habeas corpus pertaining to his prosecution, including probable cause determinations.

[2] Memorandum Opinion and Order summarizing the petitioner's pattern of vexatious litigation and enjoining him from filing any new lawsuits or other documents in the Northern District of Ohio, without first obtaining leave of court. (N.D. Oh. Dkt.# 2 at 8 - 9) (1:06cv01504).

conviction and sentence on various grounds.[3] A thorough summary of the petitioner's efforts to vacate his conviction is set forth in Magistrate Judge Seibert's Report and Recommendation in Civil Action No. 5:12cv165.

Petitioner's projected date of release, per the Bureau of Prisons ("BOP") Inmate Locator, is June 14, 2019.[4]

## II. The Pleadings

### A. Claims Raised by the Petitioner

The petitioner again attacks the validity of his conviction and sentence, asserting that he is actually innocent of money laundering. The petitioner relies on a decision issued by the United States Supreme Court in Santos.[5] The petitioner argues that the Santos decision issued a new interpretation of the terms "proceeds" as "gross Receipts" as applied to money laundering. The petitioner further alleges that his remedy under 28 U.S.C. § 2255 is inadequate and ineffective because he could not have raised the Santos claims in his prior § 2255 claim which was completed on May 19, 1999, because the Santos decision was not issued until June 2008, and he did not discover that it was retroactive and might apply to him until January 28, 2014. The petitioner also alleges that he filed a complaint with the Supreme Court of Ohio concerning the conduct of his attorney, Ronald Stidham. Attached to his original petition is a letter from the

---

[3] In October, 2006, the sentencing court noted that petitioner had already filed at least 39 post-conviction challenges to his guilty plea, conviction and sentence since 1993, via multiple §2255 motions; 4 motions seeking leave to file successive §2255 motions; a §2241 petition in the Eastern District of Kentucky; 5 petitions for writs of mandamus in the 6th Circuit Court of Appeals; a Bivens action in the N.D. of Ohio, a FTCA action, and within those cases, the underlying criminal action and the forfeiture action, he had filed 7 Fed.R.Civ.P. 60(B) motions for relief from judgment; 10 Fed.R.Civ.P. 59(e) motions to alter or amend judgment; a motion to modify his term of imprisonment; 2 motions to disqualify the U.S. Attorneys' office from responding to his actions; 2 motions for recusal of the court; a Motion to Amend Judgment under Fed.R.Civ.P. 15(c); a Motion to Vacate for Fraud upon the Court and Judgment as Void; a Motion to Amend Judgment Based on Fraud; and a Motion to Amend Judgment Based on Manifest Error of Law. (Id. at 7).

[4] See www.bop.gov.

[5] Although the petitioner does not provide a case citation, it is clear that he is referring to the Supreme Court's decision in United States v. Santos, 553 U.S. 507 (2008).

3

Supreme Court of Ohio, Clients' Security Fund, dated October 5, 1994, which indicates that Mr. Stidham's failure to properly argue the Motion to Vacate Pleas constitutes malpractice for which the law provides a remedy. However, because it had been alleged that money used to pay his two attorneys was acquired illegally, it is not clear whether the petitioner ever received compensation from the Clients' Security Fund. (Dkt. No. 1-2. p.2). For relief, the petitioner asks this court to vacate his judgment and conviction relating to the money laundering. He further requests that the court enforce the judgment of the Supreme Court of Ohio and vacate his judgment and conviction due to his lawyer's malpractice.

**B. Respondent's Motion to Dismiss, or in the Alternative, For Summary Judgment, and Response to Order to Show Cause**

The respondent contends that the petition should be dismissed, or summary judgment should be granted in its favor, because petitioner:

1) did not obtain leave of court to file this action;

2) has filed a § 2255 petitioner masquerading as a § 2241 action; and

3) has not exhausted his available administrative remedies                              .

**C. Petitioner's Response**

The petitioner argues that because the respondent did not deny that the Supreme Court of Ohio judgment adjudicated his counsel guilty of malpractice, nor did he argue that <u>Santos</u> did not apply to his money laundering conviction, the court should grant his immediate release. In addition, with respect to the respondent's argument that he failed to seek permission from the court before filing his petition, the petitioner notes that the court is aware of the pre-filing injunction in the Northern District of Ohio and previously adjudicated a § 2241 petition on the merits. The petitioner further argues that he was not required to exhaust his administrative

4

remedies because filing of administrative remedies would be futile because the BOP does not have the authority to vacate his conviction.

### III. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than

labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 1977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-52 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

## IV. Analysis

### Exhaustion of Administrative Remedies

In the response to the petition, the respondent argues that the instant § 2241 petition should be dismissed because the petitioner failed to exhaust his administrative remedies. The petitioner maintains that the respondent's argument is without merit and is misplaced.

The undersigned does not dispute that the PLRA mandates the exhaustion of administrative remedies, or that similar principles have been applied in habeas corpus actions. However, the requirements of the PLRA are applicable to civil suits in which a prisoner challenges the conditions of his confinement, not habeas proceedings challenging the execution of a sentence under 28 U.S.C. § 2241. *See LaRue v. Adams*, 2006 WL 1674487 *5 - *7

7

(S.D.W.Va. June 12, 2006) (citing *Smith v. Angelone*, 111 F.3d 1126, 1129-31 (4th Cir.) *cert. denied*, 521 U.S. 113 (1997)).[6]

The undersigned notes that the decisions of various courts dismissing a § 2241 petition for failure to exhaust administrative remedies have pertained to issues within the BOP's authority. For instance, placement in residential re-entry centers, calculation of sentences, loss of good conduct time through disciplinary proceedings, security classification, enrollment in the Residential Drug Addiction Program, and the like. The respondent has cited no case, and the undersigned has found no authority for requiring exhaustion of administrative remedies when the petitioner is filing a § 2241 petition invoking the savings clause of §2255.

Moreover, to the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions arising under § 2241 are merely judicially imposed. Because the exhaustion requirement is only judicially imposed in habeas proceedings, it follows that a Court has the discretion to waive that requirement in certain circumstances. *See Larue* at *8 (recognizing that several circuit and district courts have found that the exhaustion requirements may be waived under § 2241 and noting that although the Fourth Circuit has not directly addressed this issue, it has shown a willingness to adopt a futility exception to the general exhaustion requirement in habeas corpus actions).

---

[6] In LaRue, the Southern District of West Virginia noted that the purpose of the PLRA was to curtail the filing of frivolous prisoner civil rights actions. LaRue 2006 WL 1674487 at *7. In addition, the Court found it significant that Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) nearly simultaneous with the PLRA and that under the AEDPA Congress established separate procedures for addressing abusive habeas filings. Id. Moreover, the Court found that habeas actions were not typical civil actions because they involve someone's liberty, rather than claims of mere civil liability. Id. The Southern District cited several other district and circuit court cases that have also come to the conclusion that the PLRA and its exhaustion requirements are not applicable to habeas corpus proceedings. Id. (listing cases). The undersigned agrees with the reasoning of the Southern District of West Virginia and finds that a prisoner's challenge to the execution of his sentence under § 2241 is not subject to the PLRA's exhaustion requirements.

In this matter, the case has been served, a response has been filed and the matter is ripe for review. Therefore, to dismiss this case for the failure to exhaust at this juncture of the litigation would be a waste of judicial time and resources. Accordingly, the undersigned recommends that even if exhaustion applies to cases such as this, exhaustion be waived and this case proceed to a determination on the merits.

**Pre-filing Injunction**

The record is clear that the United States District Court for the Northern District of Ohio has determined that the petitioner is a vexatious litigator and permanently enjoined him from filing any new lawsuits without seeking and obtaining leave of court in accordance with a set of four instructions. (Dkt. No. 11-1, p. 9). The respondent argues that because the petitioner did not seek approval from this court before filing the instant § 2241 petition, the same must be dismissed. Without citing any authority, the respondent apparently contends that a prefiling injunction entered in one district court applies to actions filed in any district court.

A federal court may issue a prefiling injunction when a litigant's vexatious conduct hinders the court from fulfilling its constitutional duty. Procup v. Strickland, 792 F.2d 1069, 1973074 (19th Cir, 1986)(en banc). However, under Fourth Circuit precedent, it is imperative that the court afford the litigant notice and an opportunity to be heard prior to issuing an injunction. Croner v. Kraft Foods N. Am., 390 F.3d 812, 819 (4th Cir. 2004). Furthermore, a prefiling injunction "must be narrowly tailored to fit the particular circumstances of the case," Brow v. Farrelly, 994 F.2d 1027, 1038 (3rd Cir. 1993), and not be so broad as to effectively deny all access to the courts. Cromer, 390 F.3d at 818-19.

The undersigned has been unable to find any authority for dismissing this case because of a prefiling injunction entered in the Northern District of Ohio. Moreover, there is no indication

9

that the Northern District of Ohio afforded the petitioner notice and an opportunity to be heard prior to entering the prefiling injunction. Therefore, even if the prefiling injunction entered by the Northern District of Ohio could be enforced in this district, it appears clear that the Fourth Circuit requirements of notice and an opportunity to be heard were denied the petitioner, making the same improper within this Circuit. Accordingly, the undersigned is of the opinion that respondent's motion to dismiss based on the prefiling injunction is improperly raised.

**Santos**

As petitioner has already been advised many times, in each of his prior attempts to challenge his conviction and sentence through the vehicle of a §2241 petition, prisoners seeking to challenge the validity of their federal convictions and/or sentences must proceed under 28 U.S.C. § 2255 in the district court where they were convicted. A petition for writ of habeas corpus, pursuant to a §2241, on the other hand, is intended to address the execution of a sentence, rather than its validity, and is to be filed in the district where the prisoner is incarcerated. Thus, a § 2241 petition that challenges a federal conviction and sentence is properly construed to be a § 2255 motion. The only exception to this conclusion is where a § 2241 petition attacking a federal conviction and sentence is entertained because the petitioner can satisfy the requirements of the "savings clause" in § 2255. Section 2255 states:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that court has denied him relief, *unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention*.

28 U.S.C. § 2255 (emphasis added).

The law is clearly developed, however, that merely because relief has become unavailable under § 2255 because of a limitation bar,[7] the prohibition against successive petitions, or a procedural bar due to failure to raise the issue on direct appeal, it does not demonstrate that the §2255 remedy is inadequate or ineffective. In re Vial, 115 F. 3d 1192, 1194 (4th Cir. 1997). Moreover, in Jones, the Fourth Circuit held that:

> §2255 is inadequate and ineffective to test the legality of a conviction when: (1) at the time of the conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first §2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gate-keeping provisions of §2255 because the new rule is not one of constitutional law.

In re Jones, 226 F.3d 328, 333-334 (4th Cir. 2000).

In this case, the petitioner asserts that he is actually innocent of money laundering in violation of 18 U.S.C. § 1956(a)(1). However, in order to raise a claim of actual innocence under § 2241, Petitioner must first establish that he is entitled to review under § 2241 by meeting the Jones requirements.[8] This, the petitioner has not and cannot` do. Even if the petitioner satisfied

---

[7] In 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ["AEDPA"] was enacted, establishing a one-year limitation period within which to file any federal habeas corpus motion. 28 U.S.C. §2255.
   The limitation period shall run from the last of:
   a. The date on which the judgment of conviction becomes final;
   b. The date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
   c. The date on which the right was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
   d. The date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.
28 U.S.C. §2255.

[8] *See* Bousley v. United States, 523 U.S. 614, 623 (1998) (In order to "open the portal" to a § 2241 proceeding, the petitioner must first show that he is entitled to the savings clause of § 2255. Once those narrow and stringent requirements are met, the petitioner must then demonstrate actual innocence. Actual innocence means factual innocence, not mere legal insufficiency.); *see also* Herrera v. Collins, 506 U.S. 390, 404 (1993) ("A claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."); Royal v. Taylor, 188 F. 3d 239, 243 (4th Cir. 1999) (federal habeas relief corrects constitutional errors). Thus, a freestanding claim of actual innocence is not cognizable in federal habeas corpus and such claim should be dismissed.

the first and the third elements of Jones, the crime for which Petitioner was convicted remains a criminal offense, and therefore Petitioner cannot satisfy the second element of Jones.

Although the respondent did not address the petitioner's reliance on Santos, in making his claim of actual innocence, the undersigned has examined that decision carefully and has concluded that it is inapplicable to this matter.

In Santos, the Supreme Court addressed a challenge to Santos' convictions for operating an illegal lottery and for money laundering. The court found that the term "proceeds, as used in the money laundering statute, 18 U.S.C. § 1956, must in some instances be limited to proof of "profits" rather than "receipts" of certain specified unlawful activity in order to avoid the possibility that the same conduct will simultaneously violate two statutes.[9] Such a result was found to create a "merger problem," where one statute (the money laundering statute) radically increases the sentence for a crime such as running an illegal lottery which has been "duly considered and appropriately punished elsewhere in the Criminal Code." Santos, 553 U.S. at 517. In the case of Santos' crimes of conviction, the lottery statute provided for a maximum five-year sentence while the money laundering statute provided for a maximum sentence of twenty years. Finding no evidence that the transactions upon which the money laundering convictions were based involved profits from the lottery operation, the Supreme Court affirmed the decision of the Court of Appeals to vacate those convictions.

The Supreme Court did not discuss whether its holding in Santos was retroactive. In Teague v. Lane, 489 U.S. 288 (1989), the Supreme Court explained the exceptions to the general rule that new decisions are not retroactive, unless the new decision provides a criminal rule of

---

[9] Congress amended the money-laundering statute in May 2009; that amendment effectively overruled Santos, defining proceeds to include "gross receipts." Fraud Enforcement and Recovery Act of 2009, Pub.L. No. 111-21, § 2(f)(1), 123 Stat. 1617, 1618 (2009)(codified at 18 U.S.C. § 1956(c)(9)). However, because the enactment was not enacted at the time of the conduct giving rise to the petitioner's money-laundering convictions, this expanded definition of "proceeds" does not apply in this case.

12

procedure that is of "watershed" importance or is a substantive change in the law that imposes a new burden on the states or federal government. Schiro v. Summerlin, 542 U.S. 348, 353-58 (1004); Saffle v. Parks, 494 U.S. 484, 494-95 (1990).

Immediately following the Santos decision, many district courts concluded that the new definition of "proceeds" was not of "watershed" importance and therefore held that Santos was not retroactively applicable. However, more recently, several circuit courts have ruled that Santos is retroactively applicable because the new interpretation of the definition of "proceeds" in § 1956 is a substantive change in the law and places the burden on the prosecution to prove the use of profits, not mere gross receipts in money laundering cases. See Wooten v. Cauley, 677 F.3d 303 (6th Cir. 2012); United States v. Halstead, 634 F.3d 270, 217 (4th Cir. 2011); Garland v. Roy, 615 F.3d 391, 396 (5th Cir. 2010); King v. Keller, 372 Fed. Appx. 70, 73 (11th Cir. 2010). Furthermore, at least one district court within this Circuit has held that is "undisputed that Santos did not establish a new constitutional right. See Eames v. Jones, 703 F. Supp. 747, 751 (E.D. N.C. 2011).

Accordingly, while the petitioner is able to establish the first and third elements of Jones, he cannot satisfy the second element of Jones. More specifically, although numerous convictions for money laundering have been set aside based on the reasoning of Santos,[10] the petitioner's case does not merit said relief.

---

[10] Those results have occurred primarily in direct appeals or motions to vacate pursuant to § 2255. In the Fourth Circuit, the undersigned has found one case in which the petitioner, who had been convicted in the District of Arizona of various counts of mail and wire fraud and conspiracy to commit such fraud as well as ten counts of promotional money laundering, was found to have stated a plausible claim for his right to have his money laundering convictions vacated. See Eames v. Jones, 2011 WL 915840 (E.D. N.C. 2011). However, Sections 1341 and 1343 of Title 18 punish anyone who, "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises….Accordingly, proof of a financial transaction might establish merger with the money laundering conviction.

First, the petitioner was convicted of conspiracy to possess and to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). To obtain a conviction for a drug conspiracy, the Government must prove the following essential elements: (1) an agreement between two or more persons to engage in conduct that (1) violates a federal drug law; (2) the defendant's knowledge of the conspiracy; and (3) the defendant's knowing and voluntary participation in the conspiracy. United States v. Wilson, 135 F.3d 291, 306 (4th Cir. 1998).

The petitioner's money laundering scheme violated § 1956, which provides:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity…shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

18 U.S.C. § 1956(a)(1)(A)(i).

The facts and elements of proof necessary to support a conviction for conspiracy to possess and distribute cocaine do not include the threshold requirement for proving money laundering, i.e., the existence of a financial transaction. Therefore, the convictions here do not implicate the Santos Court's concern about merger because even if the definition of "proceeds" was "gross receipts," a violation of 18 U.S.C. § 841(a)(1), conspiracy to possess and distribute cocaine would not automatically and necessarily be a violation of 21 U.S.C. §1956(a)(1)(A)(i) money laundering. Accordingly, petitioner's convictions are not tantamount to double jeopardy, and the crimes do not merge.

Moreover, at the time of petitioner's conviction, the charge in Count 1 of conspiracy to distribute cocaine had a statutory penalty of a mandatory minimum of ten years up to life, while the charge in Count 8 of money laundering carried a statutory penalty of a maximum of 20 years

14

in prison. See United States v. Bender, supra at *3. Because the offense of conspiracy to distribute cocaine carried a maximum sentence that was greater than the maximum sentence for money laundering, there is no risk that merging what might be considered a predicate offense increased the petitioner's sentence.

**Attorney Malpractice**

In addition to his reliance on Santos, the petitioner also contends that in light of the Ohio Supreme Court's declaration that his lawyer's failure to timely file his motions to vacate plea and properly argue the motions constituted malpractice, this court should vacate his judgment. The petitioner provides no law to support this claim and gives no explanation why this claim was not raised on appeal or his numerous attempts to vacate his conviction between 1994 and mid-December 2012 in the Northern District of Ohio.

First, the undersigned notes that "[a]n action to vacate a criminal judgment based on ineffective assistance of counsel is not the same as a cause of action for legal malpractice. A claim of ineffective assistance of counsel is based on constitutional guarantees and seeks reversal of a criminal conviction. Legal malpractice is a common-law action, grounded in tort, which seeks monetary damages." Krahn v. Kinney, 433 Ohio St.3d 103, 538 H.E.2d 1958 (1989). Therefore, establishing legal malpractice does not establish a basis for reversing a conviction. Moreover, the petitioner is proceeding under § 2241, and even if counsel committed malpractice, the petitioner still has not demonstrated that he meets the Jones standard. Accordingly, like his previous two cases in this district[11], the petitioner has improperly filed a § 2241 petition.

## IV. Recommendation

For the foregoing reasons, the undersigned recommends that the respondent's Motion to Dismiss be **GRANTED**, this matter be **DISMISSED with prejudice**, and the petitioner's

---

[11] See 1:10-cv-00078-IMK-JES and 5:12-cv-00165-FPS-JES.

Motion for Immediate Release (Dkt. No. 15) and Motion for Bond and/or Immediate Release (Dkt. Mo. 17) be **DISMISSED AS MOOT.** Further, petitioner's pending Notice of Intent to File Proposed Schedule should be **DISMISSED as moot.**

**Within fourteen (14) days** after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket, and to all counsel of record electronically, as applicable.

DATED: October 21, 2014

/s Robert W. Trumble
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE